**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | |
|---|---|
| HANNIBAL IP, LLC,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Civil Action No. 7:26-CV-00341<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Hannibal IP, LLC ("Hannibal" or "Plaintiff") files this Complaint for patent infringement against Apple Inc. ("Apple" or "Defendant") and alleges as follows:

## I. PARTIES

1. Hannibal is a limited liability company organized and existing under the laws of the State of Texas with its principal place of business located at 8105 Rasor Blvd., STE 210, Plano, Texas 75024.

2. Apple is a corporation organized and existing under the laws of California with its headquarters at One Apple Park Way, Cupertino, California 95014. Apple does business in Texas including in the Western District of Texas.

## II. JURISDICTION AND VENUE

3. This civil action for patent infringement arises under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq*. The Court has subject-matter jurisdiction over the claims raised in this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4. Apple has regular and established places of business at 5501 W. Palmer Ln., Austin, TX 89727; 6900 W Parmer Ln., Austin, TX 78729; 12545 Riata Vista Cir., Austin, TX 78727; and

12555 Riata Vista Cir., Austin, TX 78727 (collectively, the "Austin Campus"). On information and belief, employees at these places of business perform activities associated with 5G compatible Apple-branded smartphones and Apple-branded tablets (collectively "Accused Products" as described further herein).

5. Apple has more employees at the Austin Campus than at any other Apple location except for its headquarters in Cupertino, CA. In 2018, Apple employed approximately 6,200 persons at the Austin Campus. https://www.apple.com/newsroom/2018/12/apple-to-build-new-campus-in-austin-and-add-jobs-across-the-us/. In December 2018 Apple announced that it would build a new campus less than a mile from its then existing campus that would "accommodate 5,000 additional employees, with the capacity to grow to 15,000, and is expected to make Apple the largest private employer in Austin." *Id.* "Jobs created at the new campus" included "a broad range of functions including engineering, R&D, operations, finance, sales and customer support." *Id.*

6. After 2018, Apple continued to invest in the Austin Campus. In 2021, Apple announced "$430 billion in US investments over five years." https://www.apple.com/newsroom/2021/04/apple-commits-430-billion-in-us-investments-over-five-years/. "Apple is spending tens of billions of dollars across these nine states [including Texas] in silicon engineering and 5G technology — two pivotal fields shaping the future of next-generation consumer electronics." *Id.* "Construction for Apple's $1 billion Austin campus [was] underway, with employees expected to start moving into the new space next year [*i.e.*, 2022]." *Id.*

7. By 2025, Apple had "more than 13,000 team members across Texas." https://www.apple.com/newsroom/2025/08/apple-increases-us-commitment-to-600-billion-usd-announces-ambitious-program/. In 2025, Apple continued to construct three new buildings

exceeding 1 million square feet that included "an expansive new R&D lab space for Apple's Hardware Engineering, Hardware Technology, and Software Engineering teams." *Id.*

8. Apple employs numerous engineers and other individuals at its Austin Campus to support Apple's research, design, development, integration, and testing of cellular technologies, including 5G, that are incorporated into the Accused Products.

9. Apple's recent job postings for positions at the Austin Campus reflect its announced commitment to bring "silicon engineering and 5G technology" jobs to Texas. https://www.apple.com/newsroom/2021/04/apple-commits-430-billion-in-us-investments-over-five-years/. For example, Apple is currently looking for a "Cellular ASIC Design Engineer" with at least ten years of experience to "contribute to designing, optimizing, and manufacturing our next-generation, high-performance, power-efficient cellular chips and system-on-chips (SoC)." https://jobs.apple.com/en-us/details/200620219-0157/cellular-asic-design-engineer?team=HRDWR. As another example, Apple is currently looking for a "Design Verification Engineer" with a BS and ten years of experience or a Master's in EE/CS and "Knowledge of 4G/5G cellular physical layer operation (3GPP)." https://jobs.apple.com/en-us/details/200658029-0157/design-verification-engineer?team=HRDWR. As another example, Apple is looking for a "Product RF Design Engineer" with a BSEE and experience to "[i]ntegrate different wireless technologies such as cellular, GPS, Wifi, and NFC into products." https://jobs.apple.com/en-us/details/200677500-0157/product-rf-design-engineer?team=HRDWR.

10. Historically, Apple used Qualcomm Inc.'s cellular modems in Apple's iPhone and iPad products. In 2017, Apple and Qualcomm had a dispute about patent licensing. This dispute ended in 2019. In 2019, Apple acquired Intel's cellular modem business, which was mostly based

in Munich, Germany. Since the acquisition, while maintaining the Munich facility, Apple grew its San Diego campus to include a large group devoted to developing, along with the Munich team, Apple cellular wireless modems. Part of Apple's impetus for locating a part of its cellular modem group in San Diego was apparently the fact that San Diego is and was the locus of Qualcomm's cellular modem development. These efforts resulted in Apple introducing its C1 modem in 2025. Today, Apple uses both Qualcomm modems and Apple modems in the Accused Products as further described below.

11. Apple is responsible for importing, making, marketing, distributing, offering for sale, and/or selling Accused Product in the United States (directly or through its wholly owned subsidiaries), including in this District. For example, Apple sells and offers to sell the Accused Products through its website, Apple.com, which may be accessed throughout the United States, the State of Texas, and this District. Additionally, Apple sells the Accused Products through its retail stores located in the State of Texas including this District, *e.g.*, Apple Barton Creek, 2901 S Capital of Texas Hwy, Austin, TX 78746 and Apple Domain Northside 3121 Palm Way, Ste. 130, Austin, TX 78758.

12. In addition, Apple induces its subsidiaries, affiliates, retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including within this District, infringing Accused Products and placing such products into the stream of commerce via established distribution channels knowing or understanding that such products would be sold and used in the United States, including in the Western District of Texas. Apple purposefully directs the Accused Products into established distribution channels within this District and the U.S. nationally. In addition, Apple directly sells Accused Products through kiosks operated within retail stores and/or has authorized sellers, retailers, sales representatives,

authorized resellers, authorized service providers, and/or partners that offer for sale and sell the Accused Products throughout the State of Texas and to consumers throughout this District, *e.g.*, Best Buy, 4627 S Jack Kultgen Expy, Waco, TX 76706; Best Buy, 3550 S General Bruce Dr, Ste. C100, Temple, TX 76504; Best Buy, 3201 S I-35 Frontage Rd, Ste 600, Round Rock, TX 78664; Costco, 2201A I-35, Georgetown, TX 78628; and Costco, 1901 Kelly Ln, Pflugerville, TX 78660.

13. Apple places such Accused Products into the stream of commerce via established distribution channels knowing or understanding that such products would be sold and used in the United States, including in the Western District of Texas. Apple has derived substantial revenue by placing such Accused Products into the stream of commerce via established distribution channels knowing or understanding that such products would be sold and used in the United States, including in the Western District of Texas.

14. The Court has specific or, alternatively, general personal jurisdiction over Apple.

15. Apple is a California corporation transacting business within the state of Texas; is causing tortious injury to Hannibal by committing all or part of the tortious acts described herein within the State of Texas, including this District; and/or is causing tortious injury by committing all or part of the tortious acts or omissions described herein outside the State of Texas while regularly conducting or soliciting business or deriving revenue from goods used or consumed or services rendered within the State of Texas, including this District.

16. This Court has personal jurisdiction over Apple in this action pursuant to due process and/or the Texas Long Arm Statute, by virtue of at least the substantial business Apple conducts in this forum, directly and/or through intermediaries, including but not limited to: (1) having committed acts within the Eastern District of Texas giving rise to this action and having established minimum contacts with this forum such that the exercise of jurisdiction over Defendant

would not offend traditional notions of fair play and substantial justice; (2) having directed its activities to customers in the State of Texas and this District, solicited business in the State of Texas and this District, transacted business within the State of Texas and this District and attempted to derive financial benefit from residents of the State of Texas and this District, including benefits directly related to the instant patent infringement causes of action set forth herein; (3) having placed its products and services into the stream of commerce throughout the United States and having been actively engaged in transacting business in Texas and in this District; and (4) either individually, as members of a common business enterprise, and/or in conjunction with third parties, having committed acts of infringement within Texas and in this District.

17. Venue is proper in this District under 28 U.S.C. § 1400(b). Apple has committed acts of infringement in this District and has a regular and established place of business in this District. For example, Apple has regular and established places of business in this District including the Austin Campus (as set forth above) and the retail stores (as set forth above).

## III. FACTUAL ALLEGATIONS

### The Asserted Patents

18. Hannibal is the owner by assignment of United States Patent No. 11,057,896, titled "Methods and Apparatuses of Determining Quasi Co-Location (QCL) Assumptions for Beam Operations" (the "'896 Patent"). A true and correct copy of the '896 Patent is attached as Exhibit 1.

19. Hannibal is the owner by assignment of United States Patent No. 11,641,661, titled "Methods and Apparatuses of Determining Quasi Co-Location (QCL) Assumptions for Beam Operations" (the "'661 Patent"). A true and correct copy of the '661 Patent is attached as Exhibit 2.

20. Hannibal is the owner by assignment of United States Patent No. 11,272,535, titled "Method and Apparatus for LBT Failure Detection" (the "'535 Patent"). A true and correct copy of the '535 Patent is attached as Exhibit 3.

21. Hannibal is the owner by assignment of United States Patent No. 11,683,142, titled "Method of Deriving QCL Assumption in Multi-Panel Transmission and Related Device," (the "'142 Patent"). A true and correct copy of the '142 Patent is attached as Exhibit 4.

22. Hannibal is the owner by assignment of United States Patent No. 10,911,201, titled "Methods and Apparatuses for Multi-TRP Transmission" (the "'201 Patent"). A true and correct copy of the '201 Patent is attached as Exhibit 5.

23. Hannibal is the owner by assignment of United States Patent No. 12,108,412, titled "Method and Apparatus for Uplink Transmission" (the "'412 Patent"). A true and correct copy of the '412 Patent is attached as Exhibit 6

**The Accused Products**

24. Apple has imported/exported into/from the United States, manufactured, used, marketed, offered for sale, and/or sold in the United States Apple-branded smartphones (iPhones) and Apple-branded tablets (iPads) that infringe one or more of the Asserted Patents. For example, beginning with the introduction of the iPhone 12 in 2020, all iPhones have been compatible with carrier's 5G networks (the "Accused iPhones"). In addition, every iPad since the release of the iPad Pro (3rd generation) in 2021 having the "cellular" option (as opposed to Wi-Fi only iPads) have been compatible with carrier's 5G networks (the "Accused iPads"). Collectively, the Accused iPhones and Accused iPads are referred to herein as the "Accused Products."

25. Each of the Accused Products include a 5G chipset or a System-on-Chip ("SoC") including at least a 5G modem. On information and belief, Apple has used either its own C-series

modem or a Qualcomm modem in the Accused Products. On information and belief, Apple used exclusively Qualcomm modems in the Accused iPhones and iPads until Apple introduced its first C-series Modem, the C-1, with the iPhone16e in February 2025. On information and belief, Apple introduced its C1X modem with the iPhone 17e and M4iPAd Air in March 2026. On information and belief, presently Apple uses either a Qualcomm modem or Apple Modem in the Accused iPhone and Accused iPad Products. For example, and not as a limitation, on information and belief Apple has used at least the Qualcomm Snapdragon X55, Snapdragon X57, Snapdragon X60, Snapdragon X65, Snapdragon X70, Snapdragon X71, and Snapdragon X80 in at least some of the Accused Products.

26. Apple has and continues to directly and indirectly infringe one or more claims of each of the Asserted Patents by engaging in acts constituting infringement under 35 U.S.C. § 271(a), (b), and/or (c), including but not necessarily limited to one or more of making, using, selling and offering to sell, in this District and elsewhere in the United States, and importing into and exporting from the United States, the Apple Accused Products or components thereof, and inducing its customers to infringe the Asserted Patents.

27. Apple provides instruction manuals that instruct the users of the Accused Products to use the Accused Products in a manner that infringes the Asserted Patents. For example, Apple advertises the compatibility of the Accused Products with 5G and how to connect its products to the 5G network to use the claimed technologies. Apple provides online manuals for users to manage and troubleshoot the Accused Product's 5G capabilities through various cellular settings.

28. Further, Apple tests each of the Accused Products in the United States and thereby directly performs the claimed method and/or uses the claimed apparatus, thus infringing the Asserted Patents. For example, Apple maintains research and development centers throughout the

world including in the United States where it tests 5G technology within the Accused Products. *See* https://appleinsider.com/articles/25/09/18/what-it-takes-to-make-sure-the-apple-watch-works-anywhere; https://www.macworld.com/article/206620/wireless_lab.html.

29. Further, the Accused Products fully support the 3GPP 5G Standard and the claimed functions or capabilities. The Accused Products include all the necessary software instruction sets required by the claims and can perform the claimed functionality. Further, the claimed inventions that have been adopted by the 3GPP Standard have been implemented by major 5G networks in the United States. For example, at least Verizon has deployed the functionalities described in Release 16 of the 3GPP Standard, including the claimed functionalities.

30. Apple's acts of infringement have caused damage to Hannibal. Hannibal is entitled to recover from Apple the damages sustained by Hannibal because of Apple's wrongful acts in an amount subject to proof at trial.

31. Apple's infringement of the Asserted Patents is and has been willful. Since at least May 27, 2022, Apple has known of one or more of the Asserted Patents as well as Hannibal's contentions of infringement of such Asserted Patents, yet Apple continued and continues to commit acts of infringement despite a high likelihood that its actions constitute infringement. Apple knew or should have known that its actions constituted an unjustifiably high risk of infringement by Apple and/or customers or end-users of the Accused Products.

## IV. FIRST CLAIM FOR RELIEF - INFRINGEMENT OF THE '896 PATENT

32. Hannibal incorporates paragraphs 1 through 31 as though fully set forth herein.

33. The '896 Patent includes nineteen (19) claims.

34. Apple infringes, contributes to the infringement of, and/or induces infringement of the '896 Patent by making, using, selling, offering for sale, exporting from, and/or importing into

the United States products and/or methods covered by one or more claims of the ’896 Patent including, but not limited to, the Accused Products.

35. As shown below, the Accused Products infringe at least claim 1 of the ’896 patent by virtue of their compliance with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to 3GPP TS 38.214 version 15.12.0 “Physical layer procedures for data.”

36. For example, and to the extent the preamble is limiting, each of the Accused Products are “user equipment (UE)” as described by the 3GPP 5G Standard.

37. Each of the Accused Products includes “one or more non-transitory computer-readable media having computer-executable instructions embodied thereon.” For example, Apple’s iPhone 12 includes a processor and memory:

**Chip**

- A14 Bionic chip
- 6-core CPU with 2 performance and 4 efficiency cores
- 4-core GPU
- 16-core Neural Engine

https://support.apple.com/en-us/111876;

**Capacity[1]**

- 64GB
- 128GB
- 256GB

https://support.apple.com/en-us/111876. This non-transitory memory holds the operating system, firmware, and software, such as applications, as well as data. *See* https://support.apple.com/en-us/111876 (at footnote 1).

38. In addition, each of the Accused Products has a 5G Modem. For example, the iPhone 12 has a Qualcomm Snapdragon X55M 5G Modem-RF system. https://www.ifixit.com/Teardown/iPhone+12+and+12+Pro+Teardown/137669. The X55M has

its own processor/controller and firmware residing onboard and/or offboard, such as in the aforementioned non-transitory memory in the iPhone 12. *See* https://docs.kernel.org/mhi/mhi.html.

39. The Accused Products further comprise "at least one processor coupled to the one or more non-transitory computer-readable media, and configured to execute the computer-executable instructions." For example, the controller of the X55M and/or the A14 processor of the iPhone 12 are configured to execute instructions stored in the aforementioned non-transitory memory of the iPhone 12 that perform the functions that follow as will be shown below.

40. The Accused Products further comprise the functionality to "monitor at least one of a plurality of Control Resource Sets (CORESETs) configured for the UE within an active Bandwidth Part (BWP) of a serving cell in a time slot" based on their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to TS 38.214 version 15.13.0:

> 5.1.5 Antenna ports quasi co-location
>
> ...
>
> For both the cases when *tci-PresentInDCI* is set to 'enabled' and *tci-PresentInDCI* is not configured in RRC connected mode, if the offset between the reception of the DL DCI and the corresponding PDSCH is less than the threshold *timeDurationForQCL*, the UE may assume that the DM-RS ports of PDSCH of a serving cell are quasi co-located with the RS(s) with respect to the QCL parameter(s) used for PDCCH quasi co-location indication of the CORESET associated with a monitored search space with the lowest *controlResourceSetId* in the latest slot in which one or more CORESETs within the active BWP of the serving cell are monitored by the UE. In this case, if the 'QCL-TypeD' of the

3GPP 5G Standard 38.214 version 15.13.0.

41. Each of the Accused Products further comprise the functionality to "apply a first Quasi Co-Location (QCL) assumption of a first CORESET of a set of one or more monitored CORESETs to receive an aperiodic Channel Status Information-Reference Signal (CSI-RS), wherein the first CORESET is associated with a monitored search space configured with a lowest CORESET Identity (ID) among the set of one or more monitored CORESETs" based on their

compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to TS 38.214 version 15.13.0:

> 5.2.1.5.1 Aperiodic CSI Reporting/Aperiodic CSI-RS
> ...
> - For each aperiodic CSI-RS resource in a CSI-RS resource set associated with each CSI triggering state, the UE is indicated the quasi co-location configuration of quasi co-location RS source(s) and quasi co-location type(s), as described in Clause 5.1.5, through higher layer signaling of *qcl-info* which contains a list of references to *TCI-*
> ...
>   - If the scheduling offset between the last symbol of the PDCCH carrying the triggering DCI and the first symbol of the aperiodic CSI-RS resources in a *NZP-CSI-RS-ResourceSet* configured without higher layer parameter *trs-Info* and without the higher layer parameter *repetition* is smaller than the UE reported threshold
>   ...
>     - if there is any other DL signal with an indicated TCI state in the same symbols as the CSI-RS, the UE applies the QCL assumption of the other DL signal also when receiving the aperiodic CSI-RS. The other
>   ...
>     - else, when receiving the aperiodic CSI-RS, the UE applies the QCL assumption used for the CORESET associated with a monitored search space with the lowest *controlResourceSetId* in the latest slot in which one or more CORESETs within the active BWP of the serving cell are monitored.

3GPP 5G Standard 38.214 version 15.13.0.

42. Thus, as just illustrated above, the Accused Products directly infringe one or more claims of the ’896 Patent. Apple makes, uses, sells, offers for sale, exports, and/or imports, in this District and/or elsewhere in the United States, these devices and thus directly infringes the ’896 Patent.

43. Apple has had knowledge and notice of the ’896 Patent since at least October 7, 2022.

44. Apple indirectly infringes the ’896 patent, as provided in 35 U.S.C. §271(b), by inducing infringement by others, such as Apple’s customers and end-users, in this District and elsewhere in the United States. For example, Apple’s customers and end-users directly infringe through their use of the inventions claimed in the ’896 Patent. Apple induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Accused Products in an infringing

manner, including in-store technical support, online technical support, marketing, product manuals, advertisements, and online documentation. As a result of Apple's inducement, Apple's customers and end-users use the Accused Products in the way Apple intends and directly infringe the '896 Patent. Apple performs these affirmative acts with knowledge of the '896 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '896 Patent.

45. Apple also indirectly infringes the '896 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers and end users, in this District and elsewhere in the United States. Apple's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Accused Products and causing the Accused Products to be manufactured, used, sold, and offered for sale contribute to Apple's customers and end-users use of the Accused Products, such that the '896 Patent is directly infringed. The accused components within the Accused Products are material to the invention of the '896 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Apple to be specially made or adapted for use in the infringement of the '896 Patent. Apple performs these affirmative acts with knowledge of the '896 Patent and with intent, or willful blindness, that Apple causes the direct infringement of the '896 Patent.

46. Apple's infringement of the '896 Patent has damaged and will continue to damage Hannibal.

47. Moreover, Apple's risk of infringement of the Asserted Patents was either known or was so obvious that it should have been known to Apple.

48. Notwithstanding this knowledge, Apple has knowingly or with reckless disregard willfully infringed the '896 Patent. Apple continues to infringe despite knowledge of Hannibal's

Asserted Patents. Apple has thus had actual notice of infringement of the ’896 Patent and acted despite an objectively high likelihood that its actions constituted infringement of Hannibal’s valid patent rights, either literally or equivalently.

49. This objective risk was either known or so obvious that it should have been known to Apple. Accordingly, Plaintiff seeks enhanced damages pursuant to 35 U.S.C. §§ 284 and 285.

## V. SECOND CLAIM FOR RELIEF - INFRINGEMENT OF THE ’661 PATENT

50. Hannibal incorporates paragraphs 1 through 49 as though fully set forth herein.

51. The ’661 Patent includes sixteen (16) claims.

52. Apple infringes, contributes to the infringement of, and/or induces infringement of the ’661 Patent by making, using, selling, offering for sale, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the ’661 Patent including, but not limited to, at least the Accused Products.

53. As shown below, the Accused Products infringe at least claim 1 of the ’661 patent by virtue of their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to 3GPP TS 38.214 version 15.12.0 “Physical layer procedures for data.”

54. For example, and to the extent the preamble is limiting, each of the Accused Products would be “user equipment (UE)” as defined in the 3GPP 5G Standard.

55. Each of the Accused Products includes “one or more non-transitory computer-readable media having computer-executable instructions embodied thereon.” For example, Apple’s iPhone 12 includes a processor and memory:

**Chip**

- A14 Bionic chip
- 6-core CPU with 2 performance and 4 efficiency cores
- 4-core GPU
- 16-core Neural Engine

https://support.apple.com/en-us/111876;

**Capacity**[1]

- 64GB
- 128GB
- 256GB

https://support.apple.com/en-us/111876. This non-transitory memory holds the operating system, firmware, and software, such as applications, as well as data. *See* https://support.apple.com/en-us/111876 (at footnote 1).

56. In addition, each of the Accused Products has a 5G Modem. For example, the iPhone 12 has a Qualcomm Snapdragon X55M 5G Modem-RF system. https://www.ifixit.com/Teardown/iPhone+12+and+12+Pro+Teardown/137669. The X55M has its own processor/controller and firmware residing onboard and/or offboard, such as in the aforementioned non-transitory memory in the iPhone 12. *See* https://docs.kernel.org/mhi/mhi.html.

57. The Accused Products further comprise "at least one processor coupled to the one or more non-transitory computer-readable media, and configured to execute the computer-executable instructions." For example, the controller of the X55M and/or the A14 processor of the iPhone 12 are configured to execute instructions stored in the non-transitory memory of the iPhone 12 that perform the functions that follow as will be shown below.

58. Each of the Accused Products further comprise the functionality to "monitor at least one of a plurality of Control Resource Sets (CORESETs) configured for the UE within an active Bandwidth Part (BWP) of a serving cell in a time slot" based on their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to TS 38.214 version 15.13.0:

5.1.5 Antenna ports quasi co-location

...

For both the cases when *tci-PresentInDCI* is set to 'enabled' and *tci-PresentInDCI* is not configured in RRC connected mode, if the offset between the reception of the DL DCI and the corresponding PDSCH is less than the threshold *timeDurationForQCL*, the UE may assume that the DM-RS ports of PDSCH of a serving cell are quasi co-located with the RS(s) with respect to the QCL parameter(s) used for PDCCH quasi co-location indication of the CORESET associated with a monitored search space with the lowest *controlResourceSetId* in the latest slot in which one or more CORESETs within the active BWP of the serving cell are monitored by the UE. In this case, if the 'QCL-TypeD' of the

3GPP 5G Standard 38.214 version 15.13.0.

59. Each of the Accused Products further comprise the functionality to "receive Downlink Control Information (DCI) scheduling a Downlink (DL) Reference Signal (RS), wherein a scheduling offset between an end of a last symbol of a Physical Downlink Control Channel (PDCCH) carrying the DCI and a beginning of a first symbol of a resource carrying the DL RS is less than a threshold" based on their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to TS 38.214 version 15.13.0:

5.2.1.5.1 Aperiodic CSI Reporting/Aperiodic CSI-RS

...

- For each aperiodic CSI-RS resource in a CSI-RS resource set associated with each CSI triggering state, the UE is indicated the quasi co-location configuration of quasi co-location RS source(s) and quasi co-location type(s), as described in Clause 5.1.5, through higher layer signaling of *qcl-info* which contains a list of references to *TCI-*

  ...

  - If the scheduling offset between the last symbol of the PDCCH carrying the triggering DCI and the first symbol of the aperiodic CSI-RS resources in a *NZP-CSI-RS-ResourceSet* configured without higher layer parameter *trs-Info* and without the higher layer parameter *repetition* is smaller than the UE reported threshold

    ...

    - if there is any other DL signal with an indicated TCI state in the same symbols as the CSI-RS, the UE applies the QCL assumption of the other DL signal also when receiving the aperiodic CSI-RS. The other

    ...

    - else, when receiving the aperiodic CSI-RS, the UE applies the QCL assumption used for the CORESET associated with a monitored search space with the lowest *controlResourceSetId* in the latest slot in which one or more CORESETs within the active BWP of the serving cell are monitored.

3GPP 5G Standard 38.214 version 15.13.0.

60. Each of the Accused Products further comprise the functionality to "apply a first Quasi Co-Location (QCL) assumption of a first CORESET of a set of one or more of the monitored at least one of a plurality of CORESETs to receive a DL-RS, wherein the first CORESET is

associated with a monitored search space configured with a lowest CORESET Identity (ID) among the set of one or more of the monitored at least one of the plurality of CORESETs" based on their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to TS 38.214 version 15.13.0:



5.2.1.5.1 Aperiodic CSI Reporting/Aperiodic CSI-RS

...

- For each aperiodic CSI-RS resource in a CSI-RS resource set associated with each CSI triggering state, the UE is indicated the quasi co-location configuration of quasi co-location RS source(s) and quasi co-location type(s), as described in Clause 5.1.5, through higher layer signaling of *qcl-info* which contains a list of references to *TCI-*

  ...

  - If the scheduling offset between the last symbol of the PDCCH carrying the triggering DCI and the first symbol of the aperiodic CSI-RS resources in a *NZP-CSI-RS-ResourceSet* configured without higher layer parameter *trs-Info* and without the higher layer parameter *repetition* is smaller than the UE reported threshold

    ...

    - if there is any other DL signal with an indicated TCI state in the same symbols as the CSI-RS, the UE applies the QCL assumption of the other DL signal also when receiving the aperiodic CSI-RS. The other

    ...

    - else, when receiving the aperiodic CSI-RS, the UE applies the QCL assumption used for the CORESET associated with a monitored search space with the lowest *controlResourceSetId* in the latest slot in which one or more CORESETs within the active BWP of the serving cell are monitored.

3GPP 5G Standard 38.214 version 15.13.0.

61. Thus, as just illustrated above, the Accused Products directly infringe one or more claims of the '661 Patent. Apple makes, uses, sells, offers for sale, exports, and/or imports, in this District and/or elsewhere in the United States, these devices and thus directly infringes the '661 Patent.

62. Apple has had knowledge and notice of the parent patent to the '661 Patent, the '896 Patent, since at least May 22, 2022. On information and belief Apple has known of the '661 Patent at least since approximately the '661 Patent's issuance on May 2, 2023, and no later than through service of this Complaint.

63. Apple indirectly infringes the '661 patent, as provided in 35 U.S.C. §271(b), by inducing infringement by others, such as Apple's customers and end-users, in this District and elsewhere in the United States. For example, Apple's customers and end-users directly infringe

through their use of the inventions claimed in the ’661 Patent. Apple induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Accused Products in an infringing manner, including in-store technical support, online technical support, marketing, product manuals, advertisements, and online documentation. As a result of Apple’s inducement, Apple’s customers and end-users use the Accused Products in the way Apple intends and directly infringe the ’896 Patent. Apple performs these affirmative acts with knowledge of the ’661 Patent and with the intent, or willful blindness, that the induced acts directly infringe the ’661 Patent.

64. Apple also indirectly infringes the ’661 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers and end users, in this District and elsewhere in the United States. Apple’s affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Accused Products and causing the Accused Products to be manufactured, used, sold, and offered for sale contribute to Apple’s customers and end-users use of the Accused Products, such that the ’661 Patent is directly infringed. The accused components within the Accused Products are material to the invention of the ’896 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Apple to be specially made or adapted for use in the infringement of the ’661 Patent. Apple performs these affirmative acts with knowledge of the ’661 Patent and with intent, or willful blindness, that Apple causes the direct infringement of the ’661 Patent.

65. Apple’s infringement of the ’661 Patent has damaged and will continue to damage Hannibal.

66. Moreover, Apple's risk of infringement of the Asserted Patents was either known or was so obvious that it should have been known to Apple.

67. Notwithstanding this knowledge, Apple has knowingly or with reckless disregard willfully infringed the '661 Patent. Apple continues to infringe despite knowledge of Hannibal's Asserted Patents. Apple has had notice of its infringement of the '661 Patent and acted despite an objectively high likelihood that its actions constituted infringement of Hannibal's valid patent rights, either literally or equivalently.

68. This objective risk was either known or so obvious that it should have been known to Apple. Accordingly, Plaintiff seeks enhanced damages pursuant to 35 U.S.C. §§ 284 and 285.

## VI. THIRD CLAIM FOR RELIEF - INFRINGEMENT OF THE '535 PATENT

69. Hannibal incorporates paragraphs 1 through 68 as though fully set forth herein.

70. The '535 Patent includes twenty (20) claims.

71. Apple infringes, contributes to the infringement of, and/or induces infringement of the '535 Patent by making, using, selling, offering for sale, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '535 Patent including, but not limited to, at least the Accused Products.

72. As shown below, the Accused Products infringe at least claim 1 of the '535 patent by virtue of their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to 3GPP TS 38.321 version 16.3.0 "Medium Access Control (MAC) protocol specification"; 3GPP TS 38.330 version 16.3.0 "NR and NG-RAN Overall description"; and 3GPP TS 38.331 version 16.2.0 "Radio Resource Control (RRC) protocol specification."

73. For example, and to the extent the preamble is limiting, each of the Accused Products are "user equipment (UE)" as described by the 3GPP 5G Standard.

74. Each of the Accused Products further comprises "one or more non-transitory computer-readable media having computer-executable instructions embodied thereon." For example, Apple's For example, Apple's iPhone 12 includes a processor and memory:

**Chip**

- A14 Bionic chip
- 6-core CPU with 2 performance and 4 efficiency cores
- 4-core GPU
- 16-core Neural Engine

https://support.apple.com/en-us/111876;

**Capacity**[1]

- 64GB
- 128GB
- 256GB

https://support.apple.com/en-us/111876. This non-transitory memory holds the operating system, firmware, and software, such as applications, as well as data. *See* https://support.apple.com/en-us/111876 (at footnote 1).

75. In addition, each of the Accused Products has a 5G Modem. For example, the iPhone 12 has a Qualcomm Snapdragon X55M 5G Modem-RF system. https://www.ifixit.com/Teardown/iPhone+12+and+12+Pro+Teardown/137669. The X55M has its own processor/controller and firmware residing onboard and/or offboard, such as in the aforementioned non-transitory memory in the iPhone 12. *See* https://docs.kernel.org/mhi/mhi.html.

76. The Accused Products further comprise "at least one processor coupled to the one or more non-transitory computer-readable media, and configured to execute the computer-executable instructions." For example, the controller of the X55M and/or the A14 processor of the

iPhone 12 are configured to execute instructions stored in the aforementioned non-transitory memory of the iPhone 12 that perform the functions that follow as will be shown below.

77. Each of the Accused Products further comprise the functionality to "receive, by a Medium Access Control (MAC) entity of the UE, a Listen-Before-Talk (LBT) failure indication from a lower layer of the UE for all uplink (UL) transmissions" based on their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to TS 38.321 version 16.3.0:



### 5.21.2 LBT failure detection and recovery procedure

The MAC entity may be configured by RRC with a consistent LBT failure recovery procedure. Consistent LBT failure is detected per UL BWP by counting LBT failure indications, for all UL transmissions, from the lower layers to the MAC entity.

RRC configures the following parameters in the *lbt-FailureRecoveryConfig*:

- *lbt-FailureInstanceMaxCount* for the consistent LBT failure detection;
- *lbt-FailureDetectionTimer* for the consistent LBT failure detection;

The following UE variable is used for the consistent LBT failure detection procedure:

- *LBT_COUNTER* (per Serving Cell): counter for LBT failure indication which is initially set to 0.

For each activated Serving Cell configured with *lbt-FailureRecoveryConfig*, the MAC entity shall:

1> if LBT failure indication has been received from lower layers:

3GPP TS 38.321 version 16.3.0.

78. Each of the Accused Products further comprise the functionality to "increase an LBT failure counter when the MAC entity receives the LBT failure indication" based on their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to TS 38.321 version 16.3.0:

### 5.21.2 LBT failure detection and recovery procedure

The MAC entity may be configured by RRC with a consistent LBT failure recovery procedure. Consistent LBT failure is detected per UL BWP by counting LBT failure indications, for all UL transmissions, from the lower layers to the MAC entity.

RRC configures the following parameters in the *lbt-FailureRecoveryConfig*:

- *lbt-FailureInstanceMaxCount* for the consistent LBT failure detection;
- *lbt-FailureDetectionTimer* for the consistent LBT failure detection;

The following UE variable is used for the consistent LBT failure detection procedure:

- *LBT_COUNTER* (per Serving Cell): counter for LBT failure indication which is initially set to 0.

For each activated Serving Cell configured with *lbt-FailureRecoveryConfig* the MAC entity shall:

1> if LBT failure indication has been received from lower layers:

2> start or restart the *lbt-FailureDetectionTimer*;

2> increment *LBT_COUNTER* by 1;

3GPP TS 38.321 version 16.3.0.

79. Each of the Accused Products further comprise the functionality to "determine that an LBT failure event has occurred when the LBT failure counter is greater than or equal to a threshold" based on their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to TS 38.321 version 16.3.0:

### 5.21.2 LBT failure detection and recovery procedure

The MAC entity may be configured by RRC with a consistent LBT failure recovery procedure. Consistent LBT failure is detected per UL BWP by counting LBT failure indications, for all UL transmissions, from the lower layers to the MAC entity.

RRC configures the following parameters in the *lbt-FailureRecoveryConfig*:

- *lbt-FailureInstanceMaxCount* for the consistent LBT failure detection;
- *lbt-FailureDetectionTimer* for the consistent LBT failure detection;

The following UE variable is used for the consistent LBT failure detection procedure:

- *LBT_COUNTER* (per Serving Cell): counter for LBT failure indication which is initially set to 0.

For each activated Serving Cell configured with *lbt-FailureRecoveryConfig*, the MAC entity shall:

1> if LBT failure indication has been received from lower layers:

2> start or restart the *lbt-FailureDetectionTimer*;

2> increment *LBT_COUNTER* by 1;

2> if *LBT_COUNTER* >= *lbt-FailureInstanceMaxCount*:

3> trigger consistent LBT failure for the active UL BWP in this Serving Cell;

3GPP TS 38.321 version 16.3.0.

80. Each of the Accused Products further comprise the functionality to "reset the LBT failure counter when a reset of the MAC entity is requested by an upper layer of the UE" based on their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to TS 38.321 version 16.3.0:

> **5.12 MAC Reset**
>
> If a reset of the MAC entity is requested by upper layers, the MAC entity shall:
>
> 1> initialize *Bj* for each logical channel to zero;
>
> ...
>
> 1> release, if any, Temporary C-RNTI;
>
> 1> reset all *BFI_COUNTER*s;
>
> 1> reset all *LBT_COUNTERs*.

3GPP TS 38.321 version 16.3.0.

81. Thus, as just illustrated above, the Accused Products directly infringe one or more claims of the '535 Patent. Apple makes, uses, sells, offers for sale, exports, and/or imports, in this District and/or elsewhere in the United States, these devices and thus directly infringes the '535 Patent.

82. Apple has had knowledge and notice of the '535 Patent and its infringement since at least February 9, 2023.

83. Apple indirectly infringes the '535 patent, as provided in 35 U.S.C. §271(b), by inducing infringement by others, such as Apple's customers and end-users, in this District and elsewhere in the United States. For example, Apple's customers and end-users directly infringe through their use of the inventions claimed in the '535 Patent. Apple induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Accused Products in an infringing

manner, including in-store technical support, online technical support, marketing, product manuals, advertisements, and online documentation. As a result of Apple's inducement, Apple's customers and end-users use the Accused Products in the way Apple intends and directly infringe the '535 Patent. Apple performs these affirmative acts with knowledge of the '535 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '535 Patent.

84. Apple also indirectly infringes the '535 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers and end users, in this District and elsewhere in the United States. Apple's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Accused Products and causing the Accused Products to be manufactured, used, sold, and offered for sale contribute to Apple's customers and end-users use of the Accused Products, such that the '535 Patent is directly infringed. The accused components within the Accused Products are material to the invention of the '535 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Apple to be specially made or adapted for use in the infringement of the '535 Patent. Apple performs these affirmative acts with knowledge of the '535 Patent and with intent, or willful blindness, that Apple causes the direct infringement of the '535 Patent.

85. Apple's infringement of the '535 Patent has damaged and will continue to damage Hannibal.

86. Moreover, Apple's risk of infringement of the Asserted Patents was either known or was so obvious that it should have been known to Apple.

87. Notwithstanding this knowledge, Apple has knowingly or with reckless disregard willfully infringed the '535 Patent. Apple continues to infringe despite knowledge of Hannibal's

Asserted Patents. Apple has thus had actual notice of infringement of the ’535 Patent and acted despite an objectively high likelihood that its actions constituted infringement of Hannibal’s valid patent rights, either literally or equivalently.

88. This objective risk was either known or so obvious that it should have been known to Apple. Accordingly, Plaintiff seeks enhanced damages pursuant to 35 U.S.C. §§ 284 and 285.

## VII. FOURTH CLAIM FOR RELIEF - INFRINGEMENT OF THE ’142 PATENT

89. Hannibal incorporates paragraphs 1 through 88 as though fully set forth herein.

90. The ’142 Patent includes eighteen (18) claims.

91. Apple infringes, contributes to the infringement of, and/or induces infringement of the ’142 Patent by making, using, selling, offering for sale, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the ’142 Patent including, but not limited to, at least the Accused Products.

92. As shown below, Apple and its Accused Products infringe at least claim 10 of the ’142 Patent by virtue of their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to 3GPP TS 38.214 version 16.5.0 “Physical layer for procedures for data;” 3GPP TS 38.331 version 16.8.0 “Radio Resource Control (RRC); Protocol specification;” and 3GPP TS 38.306 version 16.6.0 “User Equipment (UE) radio access capabilities.”

93. For example, and to the extent the preamble of claim 10 is limiting, each of the Accused Products are “user equipment (UE)” as described by the 3GPP 5G Standard for “deriving a Quasi-CoLocation (QCL) assumption in multi-panel transmission” based on their compatibility with and practice of the 3GPP 5G Standard, including but not limited to 3GPP TS 38.214:

### 5.1.5 Antenna ports quasi co-location

Independent of the configuration of *tci-PresentInDCI* and *tci-PresentDCI-1-2* in RRC connected mode, if the offset between the reception of the DL DCI and the corresponding PDSCH is less than the threshold *timeDurationForQCL* and at least one configured TCI state for the serving cell of scheduled PDSCH contains *qcl-Type* set to 'typeD',

- the UE may assume that the DM-RS ports of PDSCH(s) of a serving cell are quasi co-located with the RS(s) with respect to the QCL parameter(s) used for PDCCH quasi co-location indication of the CORESET associated with a monitored search space with the lowest *controlResourceSetId* in the latest slot in which one or more CORESETs within the active BWP of the serving cell are monitored by the UE. In this case, if the *qcl-Type* is set to 'typeD' of the PDSCH DM-RS is different from that of the PDCCH DM-RS with which they overlap in at least one symbol, the UE is expected to prioritize the reception of PDCCH associated with that CORESET. This also applies to the intra-band CA case (when PDSCH and the CORESET are in different component carriers).
- If a UE is configured with *enableDefaultTCIStatePerCoresetPoolIndex* and the UE is configured by higher layer parameter *PDCCH-Config* that contains two different values of *coresetPoolIndex* in different *ControlResourceSets,*

**Source**: 38.214

94. As discussed above, at least in paragraph 25 and others, the Accused Products all include processors, modems and memory for storing software instructions to perform the functionality described in claim 10.

95. Each of the Accused Products meets the limitations "report, to a network, capabilities of supporting a multi-transmit-receive point (TRP) operation for supporting simultaneous reception from multiple TRPs" and "a panel-specific default beam for at least one physical downlink shared channel (PDSCH) reception" as shown in the following excerpts from TS 38.331:

### 6.3.3 UE capability information elements

– *UE-NR-Capability*

The IE *UE-NR-Capability* is used to convey the NR UE Radio Access Capability Parameters, see TS 38.306 [26].

– *RF-Parameters*

The IE *RF-Parameters* is used to convey RF-related capabilities for NR operation.

```
bandNR                          FreqBandIndicatorNR,
modifiedMPR-Behaviour           BIT STRING (SIZE (8))                  OPTIONAL,
mimo-ParametersPerBand          MIMO-ParametersPerBand                 OPTIONAL,
extendedCP                      ENUMERATED {supported}                 OPTIONAL,
multipleTCI                     ENUMERATED {supported}                 OPTIONAL,
```

– *MIMO-ParametersPerBand*

The IE *MIMO-ParametersPerBand* is used to convey MIMO related parameters specific for a certain band (not per feature set or band combination).

***MIMO-ParametersPerBand* information element**

```
-- R1 16-2b-0: Support of default QCL assumption with two TCI states
defaultQCL-TwoTCI-r16               ENUMERATED {supported}                    OPTIONAL,
codebookParametersPerBand-r16       CodebookParameters-v1610                  OPTIONAL,
-- R1 16-1b-3: Support of PUCCH resource groups per BWP for simultaneous spatial relation update
simul-SpatialRelationUpdatePUCCHResGroup-r16    ENUMERATED {supported}        OPTIONAL,
```

– *CodebookParameters*

The IE *CodebookParameters* is used to convey codebook related parameters.

***CodebookParameters* information element**

```
CodebookParameters-v1610 ::=        SEQUENCE {
    supportedCSI-RS-ResourceListAlt-r16  SEQUENCE {
        type1-SinglePanel-r16             SEQUENCE (SIZE (1..maxNrofCSI-RS-Resources)) OF INTEGER (0..maxNrofCSI-RS-ResourcesAlt-1-r16)
OPTIONAL,

        type1-MultiPanel-r16              SEQUENCE (SIZE (1..maxNrofCSI-RS-Resources)) OF INTEGER (0..maxNrofCSI-RS-ResourcesAlt-1-r16)
OPTIONAL,
```

**Source**: 38.331

And

– *MIMO-ParametersPerBand*

The IE *MIMO-ParametersPerBand* is used to convey MIMO related parameters specific for a certain band (not per feature set or band combination).

***MIMO-ParametersPerBand* information element**

```
    -- R1 16-2b-0: Support of default QCL assumption with two TCI states
    defaultQCL-TwoTCI-r16                 ENUMERATED {supported}                           OPTIONAL,
    codebookParametersPerBand-r16         CodebookParameters-v1610                         OPTIONAL,
    -- R1 16-1b-3: Support of PUCCH resource groups per BWP for simultaneous spatial relation update
    simul-SpatialRelationUpdatePUCCHResGroup-r16     ENUMERATED {supported}                OPTIONAL,

multiDCI-multiTRP-Parameters-r16        SEQUENCE {
    -- R1 16-2a-0: Overlapping PDSCHs in time and fully overlapping in frequency and time
    overlapPDSCHsFullyFreqTime-r16            INTEGER (1..2)                               OPTIONAL,
   -- R1 16-2a-6: Default QCL enhancement for multi-DCI based multi-TRP
   defaultQCL-PerCORESETPoolIndex-r16        ENUMERATED {supported}                        OPTIONAL,
   -- R1 16-2a-7: Maximum number of activated TCI states
   maxNumberActivatedTCI-States-r16          SEQUENCE {
       maxNumberPerCORESET-Pool-r16              ENUMERATED {n1, n2, n4, n8},
       maxTotalNumberAcrossCORESET-Pool-r16      ENUMERATED {n2, n4, n8, n16}
   .
  -- R1 16-2c: Supports simultaneous reception with different Type-D for FR2 only
  simultaneousReceptionDiffTypeD-r16               ENUMERATED {supported}                  OPTIONAL,
```

| ***MIMO-ParametersPerBand* field descriptions** |
|---|
| ***codebookParametersPerBand***<br>For a given frequency band, this field this field indicates the alternative list of *SupportedCSI-RS-Resource* supported for each codebook type. The supported CSI-RS resources indicated by this field are referred by *codebookParametersperBC* in *CA-ParametersNR* to indicate the supported CSI-RS resource per band combination. |

**Source**: 38.331

4.2.7.2 *BandNR parameters*

| | | | | |
|---|---|---|---|---|
| ***defaultQCL-PerCORESETPoolIndex-r16***<br>Indicates whether the UE supports default QCL assumption per CORESET pool index using multi-DCI based multi-TRP. The UE that indicates support of this feature shall support *multiDCI-MultiTRP-r16* and *simultaneousReceptionDiffTypeD-r16.* | Band | No | N/A | FR2 only |

**Source**: 38.306

96. Each of the Accused Products meets the limitation "obtain a plurality of control resource set (CORESET) groups from the network of a wireless communication system" as shown by the following excerpts from TS 38.331 and TS 38.214:

***ControlResourceSet* information element**

```
-- ASN1START
-- TAG-CONTROLRESOURCESET-START

ControlResourceSet ::=              SEQUENCE {
    controlResourceSetId                ControlResourceSetId,

    frequencyDomainResources            BIT STRING (SIZE (45)),
    duration                            INTEGER (1..maxCoReSetDuration),
    cce-REG-MappingType                 CHOICE {
        interleaved                         SEQUENCE {
            reg-BundleSize                      ENUMERATED {n2, n3, n6},
            interleaverSize                     ENUMERATED {n2, n3, n6},
            shiftIndex                          INTEGER(0..maxNrofPhysicalResourceBlocks-1)       OPTIONAL -- Need S
        },
        nonInterleaved                      NULL
    },
    precoderGranularity                 ENUMERATED {sameAsREG-bundle, allContiguousRBs},
    tci-StatesPDCCH-ToAddList           SEQUENCE(SIZE (1..maxNrofTCI-StatesPDCCH)) OF TCI-StateId OPTIONAL, -- Cond NotSIB1-initialBWP
    tci-StatesPDCCH-ToReleaseList       SEQUENCE(SIZE (1..maxNrofTCI-StatesPDCCH)) OF TCI-StateId OPTIONAL, -- Cond NotSIB1-initialBWP
    tci-PresentInDCI                        ENUMERATED {enabled}                              OPTIONAL, -- Need S
    pdcch-DMRS-ScramblingID                 INTEGER (0..65535)                                OPTIONAL, -- Need S
    ...,
    [[
    rb-Offset-r16                       INTEGER (0..5)                                        OPTIONAL, -- Need S
    tci-PresentDCI-1-2-r16              INTEGER (1..3)                                        OPTIONAL, -- Need S
    coresetPoolIndex-r16                INTEGER (0..1)                                        OPTIONAL, -- Need S
    controlResourceSetId-v1610          ControlResourceSetId-v1610                            OPTIONAL  -- Need S
    ]]
```

| |
|---|
| ***coresetPoolIndex***<br>The index of the CORESET pool for this CORESET as specified in TS 38.213 [13] (clauses 9 and 10) and TS 38.214 [19] (clauses 5.1 and 6.1). If the field is absent, the UE applies the value 0. |

**Source**: 38.331

And

### 5.1.5 Antenna ports quasi co-location

Independent of the configuration of *tci-PresentInDCI* and *tci-PresentDCI-1-2* in RRC connected mode, if the offset between the reception of the DL DCI and the corresponding PDSCH is less than the threshold *timeDurationForQCL* and at least one configured TCI state for the serving cell of scheduled PDSCH contains *qcl-Type* set to 'typeD',

- the UE may assume that the DM-RS ports of PDSCH(s) of a serving cell are quasi co-located with the RS(s) with respect to the QCL parameter(s) used for PDCCH quasi co-location indication of the CORESET associated with a monitored search space with the lowest *controlResourceSetId* in the latest slot in which one or more CORESETs within the active BWP of the serving cell are monitored by the UE. In this case, if the *qcl-Type* is set to 'typeD' of the PDSCH DM-RS is different from that of the PDCCH DM-RS with which they overlap in at least one symbol, the UE is expected to prioritize the reception of PDCCH associated with that CORESET. This also applies to the intra-band CA case (when PDSCH and the CORESET are in different component carriers).
- If a UE is configured with *enableDefaultTCIStatePerCoresetPoolIndex* and the UE is configured by higher layer parameter *PDCCH-Config* that contains two different values of *coresetPoolIndex* in different *ControlResourceSets*,

**Source**: 38.214

97. Each of the Accused Products meets the limitations "determine a default QCL assumption for demodulation reference signal (DM-RS) port(s) of the at least one PDSCH reception scheduled by a scheduling physical downlink control channel (PDCCH)" and "according to a CORESET of one of the plurality of CORESET groups" as shown by the following:

### 5.1.5 Antenna ports quasi co-location

Independent of the configuration of *tci-PresentInDCI* and *tci-PresentDCI-1-2* in RRC connected mode, if the offset between the reception of the DL DCI and the corresponding PDSCH is less than the threshold *timeDurationForQCL* and at least one configured TCI state for the serving cell of scheduled PDSCH contains *qcl-Type* set to 'typeD',

- the UE may assume that the DM-RS ports of PDSCH(s) of a serving cell are quasi co-located with the RS(s) with respect to the QCL parameter(s) used for PDCCH quasi co-location indication of the CORESET associated with a monitored search space with the lowest *controlResourceSetId* in the latest slot in which one or more CORESETs within the active BWP of the serving cell are monitored by the UE. In this case, if the *qcl-Type* is set to 'typeD' of the PDSCH DM-RS is different from that of the PDCCH DM-RS with which they overlap in at least one symbol, the UE is expected to prioritize the reception of PDCCH associated with that CORESET. This also applies to the intra-band CA case (when PDSCH and the CORESET are in different component carriers).
- If a UE is configured with *enableDefaultTCIStatePerCoresetPoolIndex* and the UE is configured by higher layer parameter *PDCCH-Config* that contains two different values of *coresetPoolIndex* in different *ControlResourceSets*,
  - the UE may assume that the DM-RS ports of PDSCH associated with a value of *coresetPoolIndex* of a serving cell are quasi co-located with the RS(s) with respect to the QCL parameter(s) used for PDCCH quasi co-location indication of the CORESET associated with a monitored search space with the lowest *controlResourceSetId* among CORESETs, which are configured with the same value of *coresetPoolIndex* as the PDCCH scheduling that PDSCH, in the latest slot in which one or more CORESETs associated with the same value of *coresetPoolIndex* as the PDCCH scheduling that PDSCH within the active BWP of the serving cell are monitored by the UE. In this case, if the 'QCL-TypeD' of the PDSCH DM-RS is different from that of the PDCCH DM-RS with which they overlap in at least one symbol and they are associated with same *coresetPoolIndex*, the UE is expected to prioritize the reception of PDCCH associated with that CORESET. This also applies to the intra-band CA case (when PDSCH and the CORESET are in different component carriers).

**Source**: 38.214

98. Each of the Accused Products meets the limitations "...when a time offset between a reception of downlink control information (DCI) in the scheduling PDCCH and the at least one PDSCH reception is less than a threshold," and "wherein at least one of the plurality of CORESET groups includes at least one CORESET indicating the default QCL assumption" as shown by the following excerpts from TS 38.214 and TS 38.331:

### 5.1.5 Antenna ports quasi co-location

Independent of the configuration of *tci-PresentInDCI* and *tci-PresentDCI-1-2* in RRC connected mode, if the offset between the reception of the DL DCI and the corresponding PDSCH is less than the threshold *timeDurationForQCL* and at least one configured TCI state for the serving cell of scheduled PDSCH contains *qcl-Type* set to 'typeD',

- the UE may assume that the DM-RS ports of PDSCH(s) of a serving cell are quasi co-located with the RS(s) with respect to the QCL parameter(s) used for PDCCH quasi co-location indication of the CORESET associated with a monitored search space with the lowest *controlResourceSetId* in the latest slot in which one or more CORESETs within the active BWP of the serving cell are monitored by the UE. In this case, if the *qcl-Type* is set to 'typeD' of the PDSCH DM-RS is different from that of the PDCCH DM-RS with which they overlap in at least one symbol, the UE is expected to prioritize the reception of PDCCH associated with that CORESET. This also applies to the intra-band CA case (when PDSCH and the CORESET are in different component carriers).
- If a UE is configured with *enableDefaultTCIStatePerCoresetPoolIndex* and the UE is configured by higher layer parameter *PDCCH-Config* that contains two different values of *coresetPoolIndex* in different *ControlResourceSets*,
  - the UE may assume that the DM-RS ports of PDSCH associated with a value of *coresetPoolIndex* of a serving cell are quasi co-located with the RS(s) with respect to the QCL parameter(s) used for PDCCH quasi co-location indication of the CORESET associated with a monitored search space with the lowest *controlResourceSetId* among CORESETs, which are configured with the same value of *coresetPoolIndex* as the PDCCH scheduling that PDSCH, in the latest slot in which one or more CORESETs associated with the same value of *coresetPoolIndex* as the PDCCH scheduling that PDSCH within the active BWP of the serving cell are monitored by the UE. In this case, if the 'QCL-TypeD' of the PDSCH DM-RS is different from that of the PDCCH DM-RS with which they overlap in at least one symbol and they are associated with same *coresetPoolIndex*, the UE is expected to prioritize the reception of PDCCH associated with that CORESET. This also applies to the intra-band CA case (when PDSCH and the CORESET are in different component carriers).

**Source**: 38.214

And

***ControlResourceSet* information element**

```
-- ASN1START
-- TAG-CONTROLRESOURCESET-START

ControlResourceSet ::=              SEQUENCE {
    controlResourceSetId                ControlResourceSetId,

    frequencyDomainResources            BIT STRING (SIZE (45)),
    duration                            INTEGER (1..maxCoReSetDuration),
    cce-REG-MappingType                 CHOICE {
        interleaved                         SEQUENCE {
            reg-BundleSize                      ENUMERATED {n2, n3, n6},
            interleaverSize                     ENUMERATED {n2, n3, n6},
            shiftIndex                          INTEGER(0..maxNrofPhysicalResourceBlocks-1)       OPTIONAL -- Need S
        },
        nonInterleaved                      NULL
    },
    precoderGranularity                 ENUMERATED {sameAsREG-bundle, allContiguousRBs},
    tci-StatesPDCCH-ToAddList           SEQUENCE(SIZE (1..maxNrofTCI-StatesPDCCH)) OF TCI-StateId OPTIONAL, -- Cond NotSIB1-initialBWP
    tci-StatesPDCCH-ToReleaseList       SEQUENCE(SIZE (1..maxNrofTCI-StatesPDCCH)) OF TCI-StateId OPTIONAL, -- Cond NotSIB1-initialBWP
    tci-PresentInDCI                        ENUMERATED {enabled}                              OPTIONAL, -- Need S
    pdcch-DMRS-ScramblingID                 INTEGER (0..65535)                                OPTIONAL, -- Need S
    ...,
    [[
    rb-Offset-r16                       INTEGER (0..5)                                        OPTIONAL, -- Need S
    tci-PresentDCI-1-2-r16              INTEGER (1..3)                                        OPTIONAL, -- Need S
    coresetPoolIndex-r16                INTEGER (0..1)                                        OPTIONAL, -- Need S
    controlResourceSetId-v1610          ControlResourceSetId-v1610                            OPTIONAL  -- Need S
    ]]
```

**Source**: 38.331

99. Each of the Accused Products meets the limitation "apply the default QCL assumption for reception of the DM-RS port(s) of the at least one PDSCH" as shown by the following:

### 5.1.5 Antenna ports quasi co-location

Independent of the configuration of *tci-PresentInDCI* and *tci-PresentDCI-1-2* in RRC connected mode, if the offset between the reception of the DL DCI and the corresponding PDSCH is less than the threshold *timeDurationForQCL* and at least one configured TCI state for the serving cell of scheduled PDSCH contains *qcl-Type* set to 'typeD',

- the UE may assume that the DM-RS ports of PDSCH(s) of a serving cell are quasi co-located with the RS(s) with respect to the QCL parameter(s) used for PDCCH quasi co-location indication of the CORESET associated with a monitored search space with the lowest *controlResourceSetId* in the latest slot in which one or more CORESETs within the active BWP of the serving cell are monitored by the UE. In this case, if the *qcl-Type* is set to 'typeD' of the PDSCH DM-RS is different from that of the PDCCH DM-RS with which they overlap in at least one symbol, the UE is expected to prioritize the reception of PDCCH associated with that CORESET. This also applies to the intra-band CA case (when PDSCH and the CORESET are in different component carriers).
- If a UE is configured with *enableDefaultTCIStatePerCoresetPoolIndex* and the UE is configured by higher layer parameter *PDCCH-Config* that contains two different values of *coresetPoolIndex* in different *ControlResourceSets*,
  - the UE may assume that the DM-RS ports of PDSCH associated with a value of *coresetPoolIndex* of a serving cell are quasi co-located with the RS(s) with respect to the QCL parameter(s) used for PDCCH quasi co-location indication of the CORESET associated with a monitored search space with the lowest *controlResourceSetId* among CORESETs, which are configured with the same value of *coresetPoolIndex* as the PDCCH scheduling that PDSCH, in the latest slot in which one or more CORESETs associated with the same value of *coresetPoolIndex* as the PDCCH scheduling that PDSCH within the active BWP of the serving cell are monitored by the UE. In this case, if the 'QCL-TypeD' of the PDSCH DM-RS is different from that of the PDCCH DM-RS with which they overlap in at least one symbol and they are associated with same *coresetPoolIndex*, the UE is expected to prioritize the reception of PDCCH associated with that CORESET. This also applies to the intra-band CA case (when PDSCH and the CORESET are in different component carriers).

**Source**: 38.214

100. Thus, as just illustrated above, the Accused Products directly infringe one or more claims of the '142 Patent. Apple makes, uses, sells, offers for sale, exports, and/or imports, in this District and/or elsewhere in the United States, these devices and thus directly infringes the '142 Patent.

101. Apple has had knowledge and notice of the '142 Patent since at least September 10, 2024.

102. Apple indirectly infringes the '142 patent, as provided in 35 U.S.C. §271(b), by inducing infringement by others, such as Apple's customers and end-users, in this District and elsewhere in the United States. For example, Apple's customers and end-users directly infringe through their use of the inventions claimed in the '142 Patent. Apple induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise

making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Accused Products in an infringing manner, including in-store technical support, online technical support, marketing, product manuals, advertisements, and online documentation. As a result of Apple's inducement, Apple's customers and end-users use the Accused Products in the way Apple intends and directly infringe the '142 Patent. Apple performs these affirmative acts with knowledge of the '142 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '142 Patent.

103. Apple also indirectly infringes the '142 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers and end users, in this District and elsewhere in the United States. Apple's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Accused Products and causing the Accused Products to be manufactured, used, sold, and offered for sale contribute to Apple's customers and end-users use of the Accused Products, such that the '142 Patent is directly infringed. The accused components within the Accused Products are material to the invention of the '142 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Apple to be specially made or adapted for use in the infringement of the '142 Patent. Apple performs these affirmative acts with knowledge of the '142 Patent and with intent, or willful blindness, that Apple causes the direct infringement of the '142 Patent.

104. Apple's infringement of the '142 Patent has damaged and will continue to damage Hannibal.

105. Moreover, Apple's risk of infringement of the Asserted Patents was either known or was so obvious that it should have been known to Apple.

106. Notwithstanding this knowledge, Apple has knowingly or with reckless disregard willfully infringed the ’142 Patent. Apple continues to infringe despite knowledge of Hannibal’s Asserted Patents. Apple has thus had actual notice of infringement of the ’142 Patent and acted despite an objectively high likelihood that its actions constituted infringement of Hannibal’s valid patent rights, either literally or equivalently.

107. This objective risk was either known or so obvious that it should have been known to Apple. Accordingly, Plaintiff seeks enhanced damages pursuant to 35 U.S.C. §§ 284 and 285.

## VIII. FIFTH CLAIM FOR RELIEF - INFRINGEMENT OF THE ’201 PATENT

108. Hannibal incorporates paragraphs 1 through 107 as though fully set forth herein.

109. The ’201 Patent includes 20 claims.

110. Apple infringes, contributes to the infringement of, and/or induces infringement of the ’201 Patent by making, using, selling, offering for sale, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the ’201 Patent including, but not limited to, at least the Accused Products.

111. As shown below, Apple and its Accused Products infringe at least claim 11 of the ’201 Patent by virtue of their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to 3GPP TS 38.212 version 16.2.0 “Physical layer procedures for data”; 3GPP TS 38.213 version 16.3.0 “Physical layer procedures for control”; 3GPP TS 38.214 version 16.3.0 “Physical layer procedures for data”; 3GPP TS 38.300 version 16.3.0 “NR and NG-RAN Overall Description”; 3GPP TS 38.331 version 16.2.0 “Radio Resource Control (RRC);” and 3GPP TS 23.501 version 16.5.0 “System architecture for the 5G System (5GS).”

112. For example, and to the extent the preamble of claim 11 is limiting, each of the Accused Products is "a User Equipment" as described by the 3GPP 5G Standard that include software to perform the claimed functionality based on their compatibility with and practice of the 3GPP 5G Standard.

113. As discussed above, at least in paragraph 25 and others, the Accused Products all include processors, modems and memory for storing software instructions to perform the functionality described in claim 11.

114. Each of the Accused Products meets the limitation "receive Transmission/Reception Point (TRP) information from a base station" as shown in the following:

– *ServingCellConfig*

The IE *ServingCellConfig* is used to configure (add or modify) the UE with a serving cell which may be the SpCell or an SCell of an MCG or SCG. The parameters herein are mostly UE specific but partly also cell specific (e.g. in additionally configured bandwidth parts). Reconfiguration between a PUCCH and PUCCHless SCell is only supported using an SCell release and add.

*See* TS 38.331. The *ServingCellConfig* is an RRC information element (IE) that is sent in an RRC message by the base station to a UE and includes information relating to the TRPs.

115. Each of the Accused Products meets the limitation "communicate with a plurality of TRPs based on the TRP information" as shown by the following:

```
ServingCellConfig ::=                 SEQUENCE {
    tdd-UL-DL-ConfigurationDedicated     TDD-UL-DL-ConfigDedicated                OPTIONAL,   -- Cond TDD
    initialDownlinkBWP                   BWP-DownlinkDedicated                    OPTIONAL,   -- Need M
    ...
     lte-CRS-PatternList1-r16            SetupRelease { LTE-CRS-PatternList-r16 }       OPTIONAL,   -- Need M
     lte-CRS-PatternList2-r16            SetupRelease { LTE-CRS-PatternList-r16 }       OPTIONAL,   -- Need M
     crs-RateMatch-PerCORESETPoolIndex-r16  ENUMERATED {enabled}                        OPTIONAL,   -- Need R
    ...
      BWP-DownlinkDedicated ::=          SEQUENCE {
        pdcch-Config                        SetupRelease { PDCCH-Config }           OPTIONAL,   -- Need M
        pdsch-Config                        SetupRelease { PDSCH-Config }           OPTIONAL,   -- Need M
      ...
```

– *PDCCH-Config*

The IE *PDCCH-Config* is used to configure UE specific PDCCH parameters such as control resource sets (CORESET), search spaces and additional parameters for acquiring the PDCCH. If this IE is used for the scheduled cell in case of cross carrier scheduling, the fields other than *searchSpacesToAddModList* and *searchSpacesToReleaseList* are absent. If the IE is used for a dormant BWP, the fields other than *controlResourceSetToAddModList* and *controlResourceSetToReleaseList* are absent.

***PDCCH-Config* information element**

```
-- ASN1START
-- TAG-PDCCH-CONFIG-START

PDCCH-Config ::=                    SEQUENCE {
    controlResourceSetToAddModList      SEQUENCE(SIZE (1..3)) OF ControlResourceSet      OPTIONAL,   -- Need N
    controlResourceSetToReleaseList     SEQUENCE(SIZE (1..3)) OF ControlResourceSetId    OPTIONAL,   -- Need N
```

**Source**: 38.331

```
ControlResourceSet ::=              SEQUENCE {
    controlResourceSetId                ControlResourceSetId,
    ...
    coresetPoolIndex-r16            INTEGER (0..1)                       OPTIONAL,  -- Need S
    controlResourceSetId-v1610      ControlResourceSetId-v1610           OPTIONAL   -- Need S
    ]]
}
```

*coresetPoolIndex*
The index of the CORESET pool for this CORESET as specified in TS 38.213 [13] (clauses 9 and 10) and TS 38.214 [19] (clauses 5.1 and 6.1). If the field is absent, the UE applies the value 0.

**Source**: 38.331

5 Physical downlink shared channel related procedures

...

If a UE is configured by higher layer parameter *PDCCH-Config* that contains two different values of *CORESETPoolIndex* in *ControlResourceSet*, the UE may expect to receive multiple PDCCHs scheduling fully/partially/non-overlapped PDSCHs in time and frequency domain. The UE may expect the reception of

**Source**: 38.214

116. Each of the Accused Products meets the limitation "receive Downlink Control Information (DCI) comprising a rate matching indicator indicating a particular one of a plurality of rate match pattern configurations contained in a Radio Resource Control (RRC) message" as shown by the following:

### 7.3.1.2.2 Format 1_1

DCI format 1_1 is used for the scheduling of PDSCH in one cell.

...

- Rate matching indicator – 0, 1, or 2 bits according to higher layer parameters *rateMatchPatternGroup1* and *rateMatchPatternGroup2*, where the MSB is used to indicate *rateMatchPatternGroup1* and the LSB is used to indicate *rateMatchPatternGroup2* when there are two groups.

### 7.3.1.2.3 Format 1_2

DCI format 1_2 is used for the scheduling of PDSCH in one cell.

...

- Rate matching indicator – 0, 1, or 2 bits according to higher layer parameters *rateMatchPatternGroup1ForDCI-Format1-2* and *rateMatchPatternGroup2ForDCI-Format1-2*, where the MSB is used to indicate *rateMatchPatternGroup1ForDCI-Format1-2* and the LSB is used to indicate *rateMatchPatternGroup2ForDCI-Format1-2* when there are two groups.

**Source**: 38.212

### – *PDSCH-Config*

The *PDSCH-Config* IE is used to configure the UE specific PDSCH parameters.

***PDSCH-Config* information element**

```
...
 rateMatchPatternToAddModList        SEQUENCE (SIZE (1..maxNrofRateMatchPatterns)) OF RateMatchPattern   OPTIONAL,   -- Need N
 rateMatchPatternToReleaseList       SEQUENCE (SIZE (1..maxNrofRateMatchPatterns)) OF RateMatchPatternId OPTIONAL,   -- Need N
 rateMatchPatternGroup1              RateMatchPatternGroup                                               OPTIONAL,   -- Need R
 rateMatchPatternGroup2              RateMatchPatternGroup                                               OPTIONAL,   -- Need R
 rateMatchPatternGroup1DCI-1-2-r16       RateMatchPatternGroup                                           OPTIONAL,   -- Need R
 rateMatchPatternGroup2DCI-1-2-r16       RateMatchPatternGroup                                           OPTIONAL,   -- Need R
 RateMatchPatternGroup ::=          SEQUENCE (SIZE (1..maxNrofRateMatchPatternsPerGroup)) OF CHOICE {
     cellLevel                          RateMatchPatternId,
     bwpLevel                           RateMatchPatternId
...
```

| |
|---|
| ***rateMatchPatternGroup1, rateMatchPatternGroup1DCI-1-2***<br>The IDs of a first group of *RateMatchPatterns* defined in *PDSCH-Config->rateMatchPatternToAddModList* (BWP level) or in *ServingCellConfig->rateMatchPatternToAddModList* (cell level). These patterns can be activated dynamically by DCI (see TS 38.214 [19], clause 5.1.4.1). The field *rateMatchPatternGroup1* applies to DCI format 1_1, and the field *rateMatchPatternGroup1DCI-1-2* applies to DCI format 1_2 (see TS 38.214 [19], clause 5.1.4.1). |
| ***rateMatchPatternGroup2, rateMatchPatternGroup2DCI-1-2***<br>The IDs of a second group of *RateMatchPatterns* defined in *PDSCH-Config->rateMatchPatternToAddModList* (BWP level) or in *ServingCellConfig->rateMatchPatternToAddModList* (cell level). These patterns can be activated dynamically by DCI (see TS 38.214 [19], clause 5.1.4.1). The field *rateMatchPatternGroup2* applies to DCI format 1_1, and the field *rateMatchPatternGroup2DCI-1-2* applies to DCI format 1_2 (see TS 38.214 [19], clause 5.1.4.1). |

**Source**: 38.331

117. Each of the Accused Products meets the limitation "identify a particular TRP transmitting the DCI based on the TRP information" as shown by the following:

## 5.1 UE procedure for receiving the physical downlink shared channel

...

A UE shall upon detection of a PDCCH with a configured DCI format 1_0, 1_1 or 1_2 decode the corresponding PDSCHs as indicated by that DCI. For any HARQ process ID(s) in a given scheduled cell, the UE is not expected to receive a PDSCH that overlaps in time with another PDSCH. The UE is not expected to receive another PDSCH for a

...

If a UE is configured by higher layer parameter *PDCCH-Config* that contains two different values of *CORESETPoolIndex* in *ControlResourceSet*, the UE may expect to receive multiple PDCCHs scheduling fully/partially/non-overlapped PDSCHs in time and frequency domain. The UE may expect the reception of full/partially-overlapped PDSCHs in time only when PDCCHs that schedule two PDSCHs are associated to different *ControlResourceSets* having different values of *CORESETPoolIndex*. For a *ControlResourceSet* without *CORESETPoolIndex*, the UE may assume that the *ControlResourceSet* is assigned with *CORESETPoolIndex* as 0. When the UE is scheduled with full/partially/non-overlapped PDSCHs in time and frequency domain, the full scheduling information for receiving a PDSCH is indicated and carried only by the corresponding PDCCH, the UE is expected to be scheduled with the same active BWP and the same SCS. When the UE is scheduled with full/partially-overlapped PDSCHs in time and frequency domain, the UE can be scheduled with at most two codewords simultaneously. When PDCCHs that schedule two PDSCHs are associated to different *ControlResourceSets* having different values of *CORESETPoolIndex*, the following operations are allowed:

**Source**: 38.214

And

– *PDCCH-Config*

The IE *PDCCH-Config* is used to configure UE specific PDCCH parameters such as control resource sets (CORESET), search spaces and additional parameters for acquiring the PDCCH. If this IE is used for the scheduled cell in case of cross carrier scheduling, the fields other than *searchSpacesToAddModList* and *searchSpacesToReleaseList* are absent. If the IE is used for a dormant BWP, the fields other than *controlResourceSetToAddModList* and *controlResourceSetToReleaseList* are absent.

...

***PDCCH-Config* information element**

```
-- ASN1START
-- TAG-PDCCH-CONFIG-START

PDCCH-Config ::=                    SEQUENCE {
    controlResourceSetToAddModList      SEQUENCE(SIZE (1..3)) OF ControlResourceSet          OPTIONAL,   -- Need N
    controlResourceSetToReleaseList     SEQUENCE(SIZE (1..3)) OF ControlResourceSetId        OPTIONAL,   -- Need N
```

...

```
ControlResourceSet ::=              SEQUENCE {
    controlResourceSetId                ControlResourceSetId,
    ...
    coresetPoolIndex-r16                INTEGER (0..1)                      OPTIONAL,  -- Need S
    controlResourceSetId-v1610          ControlResourceSetId-v1610          OPTIONAL   -- Need S
    ]]
}
```

| |
|---|
| *coresetPoolIndex*<br>The index of the CORESET pool for this CORESET as specified in TS 38.213 [13] (clauses 9 and 10) and TS 38.214 [19] (clauses 5.1 and 6.1). If the field is absent, the UE applies the value 0. |

**Source**: 38.331

118. Each of the Accused Products meets the limitation "perform a rate matching procedure, based on the particular one of the plurality of rate match pattern configurations, to identify at least one radio resource unavailable for a Physical Downlink Shared Channel (PDSCH) on which a DL signal is transmitted by the particular TRP" as shown by the following:

### 5.1.4.1 PDSCH resource mapping with RB symbol level granularity

The procedures for PDSCH scheduled by PDCCH with DCI format 1_1 described in this clause equally apply to PDSCH scheduled by PDCCH with DCI format 1_2, by applying the parameters of *rateMatchPatternGroup1ForDCI-Format1-2-r16*, *rateMatchPatternGroup2ForDCI-Format1-2-r16* instead of *rateMatchPatternGroup1* and *rateMatchPatternGroup2*.

...

A configured group *rateMatchPatternGroup1* or *rateMatchPatternGroup2* contains a list of indices of *RateMatchPattern(s)* forming a union of resource-sets not available for a PDSCH dynamically if a corresponding bit of the Rate matching indicator field of the DCI format 1_1 scheduling the PDSCH is equal to 1. The REs corresponding to

**Source**: 38.214

And,

### 5.1 UE procedure for receiving the physical downlink shared channel

...

A UE shall upon detection of a PDCCH with a configured DCI format 1_0, 1_1 or 1_2 decode the corresponding PDSCHs as indicated by that DCI. For any HARQ process ID(s) in a given scheduled cell, the UE is not expected to receive a PDSCH that overlaps in time with another PDSCH. The UE is not expected to receive another PDSCH for a

...

If a UE is configured by higher layer parameter *PDCCH-Config* that contains two different values of *CORESETPoolIndex* in *ControlResourceSet*, the UE may expect to receive multiple PDCCHs scheduling fully/partially/non-overlapped PDSCHs in time and frequency domain. The UE may expect the reception of full/partially-overlapped PDSCHs in time only when PDCCHs that schedule two PDSCHs are associated to different *ControlResourceSets* having different values of *CORESETPoolIndex*. For a *ControlResourceSet* without *CORESETPoolIndex*, the UE may assume that the *ControlResourceSet* is assigned with *CORESETPoolIndex* as 0. When the UE is scheduled with full/partially/non-overlapped PDSCHs in time and frequency domain, the full scheduling information for receiving a PDSCH is indicated and carried only by the corresponding PDCCH, the UE is expected to be scheduled with the same active BWP and the same SCS. When the UE is scheduled with full/partially-overlapped PDSCHs in time and frequency domain, the UE can be scheduled with at most two codewords simultaneously. When PDCCHs that schedule two PDSCHs are associated to different *ControlResourceSets* having different values of *CORESETPoolIndex*, the following operations are allowed:

**Source**: 38.214

119. Each of the Accused Products meets the limitation "wherein the TRP information identifies a correspondence between the plurality of TRPs and a plurality of Downlink (DL) Reference Signal (RS) resources" as shown by the following:

## 5.1 UE procedure for receiving the physical downlink shared channel

...

A UE shall upon detection of a PDCCH with a configured DCI format 1_0, 1_1 or 1_2 decode the corresponding PDSCHs as indicated by that DCI. For any HARQ process ID(s) in a given scheduled cell, the UE is not expected to receive a PDSCH that overlaps in time with another PDSCH. The UE is not expected to receive another PDSCH for a

...

If a UE is configured by higher layer parameter *PDCCH-Config* that contains two different values of *CORESETPoolIndex* in *ControlResourceSet*, the UE may expect to receive multiple PDCCHs scheduling fully/partially/non-overlapped PDSCHs in time and frequency domain. The UE may expect the reception of full/partially-overlapped PDSCHs in time only when PDCCHs that schedule two PDSCHs are associated to different *ControlResourceSets* having different values of *CORESETPoolIndex*. For a *ControlResourceSet* without *CORESETPoolIndex*, the UE may assume that the *ControlResourceSet* is assigned with *CORESETPoolIndex* as 0. When the UE is scheduled with full/partially/non-overlapped PDSCHs in time and frequency domain, the full scheduling information for receiving a PDSCH is indicated and carried only by the corresponding PDCCH, the UE is expected to be scheduled with the same active BWP and the same SCS. When the UE is scheduled with full/partially-overlapped PDSCHs in time and frequency domain, the UE can be scheduled with at most two codewords simultaneously. When PDCCHs that schedule two PDSCHs are associated to different *ControlResourceSets* having different values of *CORESETPoolIndex*, the following operations are allowed:

**Source**: 38.214

And,

## 5.1.5 Antenna ports quasi co-location

- If a UE is configured with *enableDefaultTCIStatePerCoresetPoolIndex-r16* and the UE is configured by higher layer parameter *PDCCH-Config* that contains two different values of *CORESETPoolIndex* in different *ControlResourceSets,*
- the UE may assume that the DM-RS ports of PDSCH associated with a value of *CORESETPoolIndex* of a serving cell are quasi co-located with the RS(s) with respect to the QCL parameter(s) used for PDCCH quasi co-location indication of the CORESET associated with a monitored search space with the lowest *controlResourceSetId* among CORESETs, which are configured with the same value of *CORESETPoolIndex* as the PDCCH scheduling that PDSCH, in the latest slot in which one or more CORESETs associated with the same value of *CORESETPoolIndex* as the PDCCH scheduling that PDSCH within the active BWP of the serving cell are monitored by the UE.

**Source**: 38.214

120. Each of the Accused Products meets the limitation "wherein the TRP information comprises at least one of a plurality of TRP Identifiers (IDs); a plurality of Control Resource Set (CORESETS) IDs; and a TRP mapping table comprising a plurality of TRP indices and a plurality of DL RS resource indices" as shown by the following:

wherein the TRP information comprises[M] at least one of:

a plurality of TRP Identifiers (IDs);

a plurality of Control Resource Set (CORESET) IDs; and [N]

a TRP mapping table comprising a plurality of TRP indices and a plurality of DL RS resource indices.

```
ServingCellConfig ::=                SEQUENCE {
    tdd-UL-DL-ConfigurationDedicated     TDD-UL-DL-ConfigDedicated                OPTIONAL,   -- Cond TDD
    initialDownlinkBWP                   BWP-DownlinkDedicated                    OPTIONAL,   -- Need M
    ...

    lte-CRS-PatternList1-r16             SetupRelease { LTE-CRS-PatternList-r16 }   OPTIONAL,   -- Need M
    lte-CRS-PatternList2-r16             SetupRelease { LTE-CRS-PatternList-r16 }   OPTIONAL,   -- Need M
    crs-RateMatch-PerCORESETPoolIndex-r16  ENUMERATED {enabled}                     OPTIONAL,   -- Need R

...

    BWP-DownlinkDedicated ::=            SEQUENCE {
        pdcch-Config                         SetupRelease { PDCCH-Config }        OPTIONAL,   -- Need M
        pdsch-Config                         SetupRelease { PDSCH-Config }        OPTIONAL,   -- Need M
    ...

        PDCCH-Config ::=                 SEQUENCE {
            controlResourceSetToAddModList   SEQUENCE(SIZE (1..3)) OF ControlResourceSet     OPTIONAL,   -- Need N
            controlResourceSetToReleaseList  SEQUENCE(SIZE (1..3)) OF ControlResourceSetId   OPTIONAL,   -- Need N
    ...

         ControlResourceSet ::=              SEQUENCE {
            controlResourceSetId                 ControlResourceSetId,
            ...
            coresetPoolIndex-r16             INTEGER (0..1)                       OPTIONAL, -- Need S
            controlResourceSetId-v1610       ControlResourceSetId-v1610           OPTIONAL  -- Need S
            ]]
         }
```

**Source**: 38.331

121. Thus, as just illustrated above, the Accused Products directly infringe one or more claims of the ’201 Patent. Apple makes, uses, sells, offers for sale, exports, and/or imports, in this District and/or elsewhere in the United States, these devices and thus directly infringes the ’142 Patent.

122. Apple has had knowledge and notice of the ’201 Patent since at least February 9, 2023.

123. Apple indirectly infringes the ’201 patent, as provided in 35 U.S.C. §271(b), by inducing infringement by others, such as Apple’s customers and end-users, in this District and elsewhere in the United States. For example, Apple’s customers and end-users directly infringe through their use of the inventions claimed in the ’201 Patent. Apple induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Accused Products in an infringing manner, including in-store technical support, online technical support, marketing, product

manuals, advertisements, and online documentation. As a result of Apple's inducement, Apple's customers and end-users use the Accused Products in the way Apple intends and directly infringe the '201 Patent. Apple performs these affirmative acts with knowledge of the '201 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '201 Patent.

124. Apple also indirectly infringes the '201 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers and end users, in this District and elsewhere in the United States. Apple's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Accused Products and causing the Accused Products to be manufactured, used, sold, and offered for sale contribute to Apple's customers and end-users use of the Accused Products, such that the '201 Patent is directly infringed. The accused components within the Accused Products are material to the invention of the '201 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Apple to be specially made or adapted for use in the infringement of the '201 Patent. Apple performs these affirmative acts with knowledge of the '201 Patent and with intent, or willful blindness, that Apple causes the direct infringement of the '201 Patent.

125. Apple's infringement of the '201 Patent has damaged and will continue to damage Hannibal.

126. Moreover, Apple's risk of infringement of the Asserted Patents was either known or was so obvious that it should have been known to Apple.

127. Notwithstanding this knowledge, Apple has knowingly or with reckless disregard willfully infringed the '201 Patent. Apple continues to infringe despite knowledge of Hannibal's Asserted Patents. Apple has thus had actual notice of infringement of the '201 Patent and acted

despite an objectively high likelihood that its actions constituted infringement of Hannibal's valid patent rights, either literally or equivalently.

128. This objective risk was either known or so obvious that it should have been known to Apple. Accordingly, Plaintiff seeks enhanced damages pursuant to 35 U.S.C. §§ 284 and 285.

## IX. SIXTH CLAIM FOR RELIEF - INFRINGEMENT OF THE '412 PATENT

129. Hannibal incorporates paragraphs 1 through 128 as though fully set forth herein.

130. The '412 Patent includes twelve (12) claims.

131. Apple infringes, contributes to the infringement of, and/or induces infringement of the '412 Patent by making, using, selling, offering for sale, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '412 Patent including, but not limited to, at least the Accused Products.

132. As shown below, Apple and its Accused Products infringe at least claim 1 of the '412 Patent by virtue of their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited 3GPP TS 38.321 version 16.3.0 "Medium Access Control (MAC) protocol specification" and 3GPP TS 38.331 version 16.3.0 "Radio Resource Control (RRC)."

133. For example, and to the extent the preamble of claim 1 is limiting, each of the Accused Products is "a User Equipment" as described by the 3GPP 5G Standard based on their compatibility with and practice of the 3GPP 5G Standard.

134. Each of the Accused Products meets the limitation "one or more non-transitory computer-readable media having computer-executable instructions embodied thereon," "a transceiver," and "at least one processor coupled to the transceiver and the one or more non-transitory computer-readable media, the at least one processor configured to execute the

computer-executable instructions." For example, Apple's iPhone 12 includes a processor and memory:

**Chip**

- A14 Bionic chip
- 6-core CPU with 2 performance and 4 efficiency cores
- 4-core GPU
- 16-core Neural Engine

https://support.apple.com/en-us/111876;

**Capacity**[1]

- 64GB
- 128GB
- 256GB

https://support.apple.com/en-us/111876. This non-transitory memory holds the operating system, firmware, and software, such as applications, as well as data. *See* https://support.apple.com/en-us/111876 (at footnote 1).

135. In addition, each of the Accused Products has a 5G Modem. For example, the iPhone 12 has a Qualcomm Snapdragon X55M 5G Modem-RF system. https://www.ifixit.com/Teardown/iPhone+12+and+12+Pro+Teardown/137669. The X55M has its own processor/controller and firmware residing onboard and/or offboard, such as in the aforementioned non-transitory memory in the iPhone 12. *See* https://docs.kernel.org/mhi/mhi.html. Further, the iPhone 12 includes a Qualcomm SDR865 RF transceiver that works in conjunction with the modem to send and receive 5G communications.

136. Each of the Accused Products meets the limitation "receive, via the transceiver, a plurality of configured grant configurations for allocating a group of Physical Uplink Shared Channel (PUSCH) durations in a same bandwidth part (BWP), of a same serving cell, wherein at least two or more of the PUSCH durations in the group overlap in a time domain" as shown in the following:

5.4 UL-SCH data transfer

5.4.1 UL Grant reception

...

When the MAC entity is configured with *lch-basedPrioritization*, for each uplink grant whose associated PUSCH can be transmitted by lower layers, the MAC entity shall:

...

1> else if this uplink grant is a configured uplink grant:

2> if there is no overlapping PUSCH duration of another configured uplink grant which was not already de-prioritized, in the same BWP, whose priority is higher than the priority of the uplink grant; and

...

3> consider this uplink grant as a prioritized uplink grant;

3> consider the other overlapping uplink grant(s), if any, as a de-prioritized uplink grant(s);

3> consider the other overlapping SR transmission(s), if any, as a de-prioritized SR transmission(s).

**Source**: 38.321

137. Each of the Accused Products meets the limitation "identify a set of one or more PUSCH durations that may be used for a PUSCH repetition transmission from the group of PUSCH durations" as shown in the following:

5.4 UL-SCH data transfer

5.4.1 UL Grant reception

...

For the MAC entity configured with *lch-basedPrioritization*, priority of an uplink grant is determined by the highest priority among priorities of the logical channels that are multiplexed (i.e. the MAC PDU to transmit is already stored in the HARQ buffer) or have data available that can be multiplexed (i.e. the MAC PDU to transmit is not stored in the HARQ buffer) in the MAC PDU, according to the mapping restrictions as described in clause 5.4.3.1.2. The priority of

...

When the MAC entity is configured with *lch-basedPrioritization*, for each uplink grant whose associated PUSCH can be transmitted by lower layers, the MAC entity shall:

...

1> else if this uplink grant is a configured uplink grant:

2> if there is no overlapping PUSCH duration of another configured uplink grant which was not already de-prioritized, in the same BWP, whose priority is higher than the priority of the uplink grant; and

...

**Source**: 38.321

138. Each of the Accused Products meets the limitation "select a specific PUSCH duration from the identified set of one or more PUSCH durations as a prioritized PUSCH duration" as shown in the following:

5.4 UL-SCH data transfer

5.4.1 UL Grant reception

...

When the MAC entity is configured with *lch-basedPrioritization*, for each uplink grant whose associated PUSCH can be transmitted by lower layers, the MAC entity shall:

...

1> else if this uplink grant is a configured uplink grant:

2> if there is no overlapping PUSCH duration of another configured uplink grant which was not already de-prioritized, in the same BWP, whose priority is higher than the priority of the uplink grant; and

...

3> consider this uplink grant as a prioritized uplink grant;

**Source**: 38.321

139. Each of the Accused Products meets the limitation "perform the PUSCH repetition transmission, via the transceiver, on the prioritized PUSCH duration" as shown by the following:

5.4 UL-SCH data transfer

5.4.1 UL Grant reception

...

3> consider this uplink grant as a prioritized uplink grant;

5.4.2 HARQ operation

5.4.2.1 HARQ Entity

...

4> if the uplink grant is a prioritized uplink grant:

5> deliver the MAC PDU and the uplink grant and the HARQ information of the TB to the identified HARQ process;

5> instruct the identified HARQ process to trigger a new transmission;

**Source**: 38.321

140. Thus, as just illustrated above, the Accused Products directly infringe one or more claims of the '412 Patent. Apple makes, uses, sells, offers for sale, exports, and/or imports, in this District and/or elsewhere in the United States, these devices and thus directly infringes the '412 Patent.

141. Apple has had knowledge and notice of the parent patent to the '412 Patent, the '642 Patent, since at least October 7, 2022. On information and belief Apple has known of the '412

Patent at least since approximately the ’412 Patent’s issuance on October 1, 2024 and no later than through service of this Complaint.

142. Apple indirectly infringes the ’412 patent, as provided in 35 U.S.C. §271(b), by inducing infringement by others, such as Apple’s customers and end-users, in this District and elsewhere in the United States. For example, Apple’s customers and end-users directly infringe through their use of the inventions claimed in the ’412 Patent. Apple induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Accused Products in an infringing manner, including in-store technical support, online technical support, marketing, product manuals, advertisements, and online documentation. As a result of Apple’s inducement, Apple’s customers and end-users use the Accused Products in the way Apple intends and directly infringe the ’412 Patent. Apple performs these affirmative acts with knowledge of the ’412 Patent and with the intent, or willful blindness, that the induced acts directly infringe the ’412 Patent.

143. Apple also indirectly infringes the ’412 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers and end users, in this District and elsewhere in the United States. Apple’s affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Accused Products and causing the Accused Products to be manufactured, used, sold, and offered for sale contribute to Apple’s customers and end-users use of the Accused Products, such that the ’412 Patent is directly infringed. The accused components within the Accused Products are material to the invention of the ’412 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Apple to be specially made or adapted for use in the

infringement of the ’412 Patent. Apple performs these affirmative acts with knowledge of the ’412 Patent and with intent, or willful blindness, that Apple causes the direct infringement of the ’412 Patent.

144. Apple’s infringement of the ’412 Patent has damaged and will continue to damage Hannibal.

145. Moreover, Apple’s risk of infringement of the Asserted Patents was either known or was so obvious that it should have been known to Apple.

146. Notwithstanding this knowledge, Apple has knowingly or with reckless disregard willfully infringed the ’412 Patent. Apple continues to infringe despite knowledge of Hannibal’s Asserted Patents. Apple has thus had actual notice of infringement of the ’412 Patent and acted despite an objectively high likelihood that its actions constituted infringement of Hannibal’s valid patent rights, either literally or equivalently.

147. This objective risk was either known or so obvious that it should have been known to Apple. Accordingly, Plaintiff seeks enhanced damages pursuant to 35 U.S.C. §§ 284 and 285.

## X. NOTICE

148. Hannibal has complied with the notice requirement of 35 U.S.C. § 287 and does not currently distribute, sell, offer for sale, or make products embodying the Asserted Patents. This notice requirement has been complied with by all relevant persons at all relevant times.

## XI. COMPLIANCE WITH FRAND

149. Hannibal is the assignee of numerous patents, originally assigned to FG Innovation Company Limited, that are, and remain, essential to practicing the 3GPP 5G Standard.

150. In conformance with ESTI's IPR Policy, Hannibal informed Apple that it is prepared to grant Apple an irrevocable license to Hannibal's standard essential patents, including the Asserted Patents, on FRAND or better terms.

151. Hannibal has engaged with Apple over the course of several years and complied with its FRAND obligations in accordance with ESTI's IPR Policy.

## XII. JURY DEMAND

152. Plaintiff Hannibal demands a trial by jury of all matters to which it is entitled to trial by jury, pursuant to Fed. R. Civ. P. 38.

## XIII. REQUEST FOR RELIEF

Hannibal respectfully requests that judgment be entered as follows:

A. A declaration that one or more claims of the Asserted Patents is infringed by Apple literally and/or under the doctrine of equivalents;

B. A declaration that one or more claims of the Asserted Patents is indirectly infringed by Apple;

C. That the Court award damages adequate to compensate Hannibal for the patent infringement that has occurred, together with prejudgment and post-judgment interest and costs, and an ongoing royalty for continued infringement;

D. That the Court award any other equitable relief which may be requested and to which Hannibal is entitled;

E. That the Court find this case to be exceptional pursuant to 35 U.S.C. § 285;

F. That the Court determine that Apple's acts of infringement were willful;

G. That the Court award enhanced damages against Apple pursuant to 35 U.S.C. § 284;

H. That the Court award reasonable attorneys' fees; and

I. That the Court award such other relief to Hannibal as the Court deems just and proper.

Dated: August 28, 2026

Respectfully submitted,

*/s/ Vishal H. Patel*
Vishal H. Patel
Texas Bar No. 24065885
Lead Counsel
Rajkumar Vinnakota
Texas Bar No. 24042337
Gary R. Sorden
Texas Bar No. 24066124
Brian L. King
Texas Bar No. 24055776
Brian A. Carpenter
Texas Bar No. 03840600
Arjun Nair
Texas Bar No. 24120122

COLE SCHOTZ P.C.
901 Main Street, Suite 4120
Dallas, TX 75202
Tel.: (469) 557-9390
Fax: (469) 533-1587
vpatel@coleschotz.com
kvinnakota@coleschotz.com
gsorden@coleschotz.com
bking@coleschotz.com
bcarpenter@coleschotz.com
anair@coleschotz.com

**ATTORNEYS FOR PLAINTIFF HANNIBAL IP, LLC**